**COURT OF CHANCERY**
OF THE
**STATE OF DELAWARE**

TAMIKA R. MONTGOMERY-REEVES
VICE CHANCELLOR

Leonard Williams Justice Center
500 N. King Street, Suite 11400
Wilmington, Delaware 19801-3734

Date Submitted: July 12, 2018
Date Decided:  October 31, 2018

M. Duncan Grant, Esquire
Christopher B. Chuff, Esquire
Pepper Hamilton LLP
1313 N. Market Street, Suite 5100
Wilmington, DE 19801

Eric Lopez Schnabel, Esquire
Robert W. Mallard, Esquire
Alessandra Glorioso, Esquire
Dorsey & Whitney LLP
300 Delaware Avenue, Suite 1010
Wilmington, DE 19801

RE:  ***Diane C. Creel v. Ecolab, Inc.***
Civil Action No. 12917-VCMR

Dear Counsel:

This letter opinion addresses Defendant's Motion for Summary Judgment Dismissing Count I of the Complaint.  For the reasons stated below, I deny the Motion for Summary Judgment.

## I.     BACKGROUND

The facts in this opinion derive from the pleadings, the parties' submitted affidavits, and exhibits cited therein.[1]

---

[1]      Ct. Ch. R. 56(c).

This action involves Diane C. Creel's request for indemnification from Ecolab, Inc. ("Ecolab"), a Delaware corporation in the business of providing water, hygiene, and energy technologies.[2] Creel was the President, Chief Executive Officer, and Chair of the Board of Directors of Ecovation, Inc. ("Ecovation" or the "Company"), Ecolab's predecessor.[3] Various stockholders of Ecovation sued Creel for breaches of fiduciary duty in two underlying actions.[4] One action ended in settlement,[5] and the other ended when the court granted summary judgment in favor of Creel.[6] This motion does not turn on any of the facts in these underlying actions. Therefore, I spare the reader the long recitation that would be necessary to fully explain the various relationships and allegations.

In this motion, Ecolab seeks summary judgment, arguing that Creel was obligated to, but did not, obtain its approval before agreeing to settle the underlying action.[7] Three separate documents provide Creel with indemnification rights: the

---

[2]     Compl. ¶¶ 7, 110.

[3]     *Id.* ¶ 2.

[4]     *Id.* ¶ 1; *id.* Ex. A ¶¶ 135-36.

[5]     *Id.* ¶¶ 86-88; Def.'s Opening Br. 16.

[6]     Compl. ¶ 92.

[7]     Def.'s Opening Br. 31-42.

Company's Amended and Restated Certificate of Incorporation (the "Charter"), the Company's Bylaws (the "Bylaws"), and the Indemnification Agreement Ecolab executed when Creel joined Ecovation (the "Indemnification Agreement").[8] Two documents, the Charter and the Bylaws, clearly do not require any approval of the settlement, and the parties do not dispute this interpretation of the documents' indemnification provisions.[9] The Indemnification Agreement clearly does require approval of the settlement, and the parties do not dispute this interpretation of the agreement.[10] Instead, the Company argues that the Indemnification Agreement supersedes the Charter and the Bylaws, and thus, under the terms of the Indemnification Agreement, Creel must have obtained Ecolab's approval of the settlement to receive indemnification.[11] Therefore, the deciding issue in this motion for summary judgment is strictly one of contract interpretation; I must determine whether the Indemnification Agreement's requirement for approval of the settlement

---

[8] Compl. Ex. D, at 16-17; *id.* Ex. E, at 9; *id.* Ex. F. Ecovation was formerly known as AnAerobics, Inc.; the Charter and Bylaws reflect the former name.

[9] *Id.* Ex. D, at 16-17; *id.* Ex. E, at 9; Def.'s Opening Br. 35; Pl.'s Answering Br. 25.

[10] Compl. Ex. F § 1(a); Def.'s Opening Br. 34; Pl.'s Answering Br. 25.

[11] Def.'s Opening Br. 31-42. The parties dispute whether Creel obtained Ecolab's approval. *Id.* at 40-41; Pl.'s Answering Br. 28.

supersedes the indemnification provisions of the Charter and the Bylaws or whether the Charter and the Bylaws instead provide independent sources of indemnification.

## II.    ANALYSIS

### A.    Standard of Review

Summary judgment will be "granted if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[12] The movant bears the initial burden of demonstrating that there is no question of material fact.[13] When the movant carries that burden, the burden shifts to the nonmoving party "to present some specific, admissible evidence that there is a genuine issue of fact for a trial."[14] When considering a motion for summary judgment, this Court must view the evidence and the inferences drawn from the evidence in the light most favorable to the nonmoving party.[15] Even so, the

---

[12]    *Twin Bridges Ltd. P'ship v. Draper*, 2007 WL 2744609, at *8 (Del. Ch. Sept. 14, 2007) (citing Ct. Ch. R. 56(c)).

[13]    *Deloitte LLP v. Flanagan*, 2009 WL 5200657, at *3 (Del. Ch. Dec. 29, 2009).

[14]    *Id.* (citing *Watson v. Taylor*, 829 A.2d 936 (TABLE), 2003 WL 21810822, at *2 (Del. Aug. 4, 2003)).

[15]    *Judah v. Del. Tr. Co.*, 378 A.2d 624, 632 (Del. 1977); *Fike v. Ruger*, 754 A.2d 254, 260 (Del. Ch. 1999), *aff'd*, 752 A.2d 112 (Del. 2000).

nonmoving party may not rely on allegations or denials in the pleadings to create a material factual dispute.[16]

The dispute in this motion turns on contract interpretation. "[T]he rules that govern the interpretation of statutes, contracts, and other written instruments apply to the interpretation of corporate charters and bylaws."[17] "Delaware follows an objective theory of contracts, 'which requires a court to interpret a particular contractual term to mean "what a reasonable person in the position of the parties would have thought it meant."'"[18] Delaware courts interpret the clear and unambiguous terms of a contract according to their plain meaning.[19] If a term in a contract is reasonably susceptible to more than one interpretation, then that term is ambiguous, but "[t]he parties' steadfast disagreement over interpretation will not, alone, render the contract ambiguous."[20]

---

[16] Ct. Ch. R. 56(e).

[17] *Charney v. Am. Apparel, Inc.*, 2015 WL 5313769, at *6 (Del. Ch. Sept. 11, 2015) (alteration in original) (quoting *Sassano v. CIBC World Mkts. Corp.*, 948 A.2d 453, 462 (Del. Ch. 2008)).

[18] *Narayanan v. Sutherland Glob. Hldgs. Inc.*, 2016 WL 3682617, at *11 (Del. Ch. July 5, 2016) (quoting *Charney*, 2015 WL 5313769, at *10).

[19] *Id.*

[20] *Estate of Osborn v. Kemp*, 991 A.2d 1153, 1160 (Del. 2010) (citing *Rhone-Poulenc Basic Chems. Co. v. Am. Motorists Ins. Co.*, 616 A.2d 1192, 1195 (Del. 1992)).

### B. The Indemnification Agreement Does Not Supersede the Charter or the Bylaws

"Section 145(f) makes clear that the indemnification and advancement rights under the DGCL are not exclusive of any additional indemnification and advancement rights a corporation chooses to provide through a separate instrument."[21] The first sentence of Section 145(f) states,

> The indemnification and advancement of expenses provided by, or granted pursuant to, the other subsections of this section shall not be deemed exclusive of any other rights to which those seeking indemnification or advancement of expenses may be entitled under any bylaw, agreement, vote of stockholders or disinterested directors or otherwise, both as to action in such person's official capacity and as to action in another capacity while holding such office.

In accordance with Section 145(f), companies often provide indemnification to their directors and officers in their charters, bylaws, or other agreements.

Creel relies on the indemnification provisions of the Charter and the Bylaws as the sources of indemnification for her portion of the settlement.[22] Ecovation's

---

[21] *Narayanan*, 2016 WL 3682617, at \*9; *see also Charney*, 2015 WL 5313769, at \*8; *Danenberg v. Fitracks, Inc.*, 2012 WL 11220, at \*5 (Del. Ch. Jan. 3, 2012).

[22] Compl. ¶¶ 103-04, 110. When Ecolab acquired Ecovation, it became obligated under the terms of the merger agreement to provide advancement and indemnification to Ecovation's former officers and directors, including Creel, to the same extent as those officers and directors were entitled to advancement and indemnification under Ecovation's Charter, Bylaws, or any other agreement. *Id.*

Charter provides Creel with indemnification and advancement rights "to the fullest

extent authorized" by the General Corporation Law of Delaware:

> Each person who was or is made a party or is threatened to be made a party to or is otherwise involved in any action, suit or proceeding, whether civil, criminal, administrative or investigative (hereinafter a "proceeding"), by reason of the fact that he or she is or was a director or officer of the Corporation . . . whether the basis of such proceeding is alleged action in an official capacity as a director, officer, employee or agent or in any other capacity while serving as a director, officer, employee or agent, shall be indemnified and held harmless by the Corporation to the fullest extent authorized by the Delaware General Corporation Law . . . against all expense, liability and loss (including attorneys' fees, judgments, fines, ERISA excise taxes or penalties and amounts paid in settlement) reasonably incurred or suffered by the indemnitee in connection therewith . . . . The right to indemnification conferred by this Article shall be a contract right and shall include the right to be paid by

---

Ex. C § 7.5(a) ("[Ecolab] and [Empire Acquisition, Inc.] jointly and severally agree that all rights to indemnification and advancement of expenses for acts or omissions occurring prior to the [merger] (including acts or omissions in connection with this Agreement and the consummation of the transactions contemplated hereby) now existing in favor of the Company's current and former directors and officers (each a 'D&O Indemnified Party') as provided in the Company's Governing Documents, and in any indemnification agreements with the D&O Indemnified Parties, will survive the Merger and will thereafter continue in full force and effect in accordance with their terms. [Ecolab] and [Empire Acquisition, Inc.] jointly and severally will advance expenses to and indemnify the D&O Indemnified Parties to the same extent as the Indemnified Parties currently are entitled to advancement of expenses and indemnification.").

the Corporation the expenses incurred in defending any such proceeding in advance of its final disposition . . . .[23]

The Charter also contains a non-exclusivity provision: "The rights to indemnification and to the advancement of expenses conferred by this Article shall not be exclusive of any other right which any person may have or hereafter acquire under any provision of any statute, [the Charter], [the Bylaws], any agreement, . . . or otherwise."[24]

Similarly, Evocation's Bylaws provide Creel with indemnification and advancement rights "[t]o the fullest extent authorized or permitted" by the General Corporation Law of Delaware:

> To the fullest extent authorized or permitted by the Delaware General Corporation Law, as amended from time to time, the Corporation shall indemnify any person made, or threatened to be made, a party in any civil or criminal action or proceeding by reason of the fact that he . . . is or was a Director or corporate officer of the Corporation . . . . As used in this Article, the term "indemnify", in all its forms, shall be deemed to include the advancement of legal and other expenses incurred in defending a civil or criminal action or proceeding.[25]

---

[23] *Id.* Ex. D, at 16-17.

[24] *Id.* at 17-18.

[25] Compl. Ex. E art. V, § 1, at 9.

Like the Charter, the Bylaws also include a non-exclusivity provision: "The provisions of this Section 1 shall not be exclusive of any other rights to which any such person may be entitled, whether contained in the Corporation's [Charter], [the Bylaws] or any agreement or resolution providing for indemnification and permitted by law."[26]

Creel does not rely on the Indemnification Agreement as a source of indemnification,[27] but Ecolab asserts that the Indemnification Agreement defines the terms of Creel's right to indemnification.[28] The Indemnification Agreement differs from the Charter and Bylaws in its definition of covered expenses. The Charter provides indemnification "against all expense, liability and loss (including attorneys' fees, judgments, fines, ERISA excise taxes or penalties and amounts paid in settlement)."[29] The Bylaws do not contain any definition of covered expenses.[30] The Indemnification Agreement expressly provides indemnification against "reasonable attorneys' fees, judgments, fines and amounts paid in settlement (if such

---

[26]    *Id.*

[27]    *See* Compl. ¶¶ 103-04, 110.

[28]    Def.'s Opening Br. 33.

[29]    Compl. Ex. D, at 16.

[30]    *See id.* Ex. E art. V, at 9-10.

settlement is approved in advance by the Company),” which are defined collectively

as “Expenses.”[31]

Ecolab acknowledges that the Charter and the Bylaws do not require approval

of the settlement to trigger indemnification.[32]  It argues, however, that where a later

contract between parties covers the same subject matter as an earlier contract, the

new contract supersedes and controls whenever the two agreements conflict.[33]

Ecolab asserts that the Indemnification Agreement supersedes the indemnification

provisions of the Charter and the Bylaws because the Indemnification Agreement’s

definition of Expenses requires approval of the settlement.[34]

The Indemnification Agreement contains several clauses that refer to the

Charter and the Bylaws.  For example, the Indemnification Agreement refers to the

Charter and the Bylaws in its non-exclusivity clause:

> The right to indemnification and advancement of
> Expenses provided by this Agreement *shall not be*
> *exclusive of any other rights* to which Indemnitee may be

---

[31]     *Id.* Ex. F § 1(a), at 9-10.

[32]     Def.’s Opening Br. 35.

[33]     *Id.* at 32-33.

[34]     *Id.* at 31-39.

entitled under the [Charter] or Bylaws ... of the Company ... ;

PROVIDED, HOWEVER, that to the extent Indemnitee otherwise would have any greater right *to indemnification and/or advancement of Expenses* under any provision of the Charter or the Bylaws of the Company, Indemnitee shall be deemed to have such greater right pursuant to this Agreement; and,

PROVIDED, FURTHER, that to the extent that any change is made to the Delaware law ... , the Charter and/or the Bylaws of the Company that permits any greater right to indemnification and/or advancement of Expenses than that provided under this Agreement as of the date hereof, Indemnitee shall be deemed to have such greater right pursuant to this Agreement.[35]

The first clause refers to "any other rights" in the Charter or Bylaws.[36] This language implicates rights broader than the "right to indemnification and advancement of Expenses" only.[37] Interpreting the plain language of the Indemnification Agreement, the first clause explicitly allows for broader indemnification rights in the Charter or Bylaws and does not create a conflict. It includes rights to indemnification and advancement of non-Expenses or expenses

---

[35]    *Id.* § 16(a) (emphases and formatting added).

[36]    *Id.*

[37]    *Id.*

covered by the Charter or Bylaws but not by the Indemnification Agreement. The second clause clarifies that the Indemnification Agreement does not limit any broader rights applicable to Expenses. These two provisions have different meanings. The first addresses rights other than Expenses, and the second directly addresses rights to Expenses. Neither is superfluous.

Additionally, the recitals include references to the Charter and the Bylaws that support my interpretation of the Indemnification Agreement. Although "'[g]enerally, recitals are not a necessary part of a contract,' . . . they can be useful to explain the intended meaning of other terms."[38] Here, the recitals state the purposes of the Indemnification Agreement:

> WHEREAS, the Charter . . . and Bylaws . . . of the Company provide for indemnification by the Company of its directors and officers as provided therein, and the *Indemnitee*, at the Company's request, *has agreed to serve* as a director, officer, or employee of the Company partly *in reliance on such provision*; and
>
> WHEREAS, to provide the Indemnitee with *additional contractual assurance* of protection against personal liability in connection with certain proceedings described below, the Company and Indemnitee desire to enter into this Agreement; and

---

[38]     *Utilisave, LLC v. Miele*, 2015 WL 5458960, at *7 (Del. Ch. Sept. 17, 2015) (quoting *New Castle Cty. v. Crescenzo*, 1985 WL 21130, at *3 (Del. Ch. Feb. 11, 1985)).

> WHEREAS, Section 145 of the Delaware General Corporation Law . . . expressly recognizes that the *indemnification provisions therein are not exclusive* of any other rights to which a person seeking indemnification may be entitled under the Charter or Bylaws of the Company . . . , and *this Agreement is being entered into pursuant to and in furtherance of the Charter and Bylaws* of the Company, as permitted by the DGCL and as authorized by the Charter and the Bylaws; and
>
> WHEREAS, in order to *induce the Indemnitee to continue to serve* as a director, officer and/or employee of the Company and in consideration of Indemnitee's so serving, the Company desires to indemnify the Indemnitee and to make arrangements pursuant to which the Indemnitee may be advanced or reimbursed expenses incurred by the Indemnitee in certain proceedings described below, according to the terms and conditions set forth below.[39]

None of the recitals indicates any contradiction between the Indemnification Agreement and the Charter or Bylaws. They indicate precisely the opposite. First, the recitals acknowledge that Creel agreed to serve as a director and officer of the Company in reliance on the indemnification provisions—not of the Indemnification Agreement—but of the Charter and the Bylaws.[40] The terms of the Charter and the Bylaws provide for indemnification of the settlement without Ecolab's approval.[41]

---

[39] Compl. Ex. F, at 1 (emphases added).

[40] *Id.*

[41] *See* Compl. Ex. D § 1(a), at 16; *id.* Ex. E art. V, § 1, at 9.

Second, the recitals indicate that the Indemnification Agreement provides "additional contractual assurance" "against personal liability" beyond those provided in the Charter and Bylaws.[42] Third, the recitals also acknowledge that Section 145 allows for multiple sources of indemnification and that the Indemnification Agreement is "pursuant to and in furtherance of the Charter and Bylaws."[43] It is inconsistent with the language in the recitals to suggest that the Indemnification Agreement limits, alters, or supersedes the Charter or the Bylaws. If anything, the recitals indicate that the Indemnification Agreement is an expansion of Creel's rights under the Charter and the Bylaws.

The plain language of the Indemnification Agreement does not support Ecolab's argument. To the contrary, the plain language indicates no intent to alter, amend, limit, or supersede the Charter or Bylaws. Sophisticated parties drafted and entered into the Indemnification Agreement. If the parties had intended to limit the Charter or Bylaws, they could have and should have done so explicitly. The Indemnification Agreement does not limit Creel's right to indemnification under the

---

[42]     *Id.* Ex. F, at 1.

[43]     *Id.*

Charter or Bylaws. Thus, it does not require approval under the indemnification provisions of the Charter and Bylaws.[44]

## III.  CONCLUSION

For the foregoing reasons, I DENY Defendant's Motion for Summary Judgment Dismissing Count I of the Complaint.

**IT IS SO ORDERED**.

Sincerely,

*/s/Tamika Montgomery-Reeves*

Vice Chancellor

TMR/jp

---

[44]  Because the Charter indemnifies against amounts paid in settlement (without an approval requirement) and Creel identifies the Charter as a source of indemnification (Compl. ¶ 103.), Ecolab's second argument, that Creel did not obtain approval, is moot.